1  Roger F. Friedman (State Bar No. 186070)
rfriedman@rutan.com
2  Caroline R. Djang (State Bar No. 216313)
cdjang@rutan.com
3  RUTAN & TUCKER, LLP
611 Anton Boulevard, Fourteenth Floor
4  Costa Mesa, California 92626-1931
Telephone:   714-641-5100
5  Facsimile:   714-546-9035

6  Attorneys for the
Official Committee of Unsecured Creditors of
7  Project Playlist, Inc. and Playlist, Inc.

8              UNITED STATES BANKRUPTCY COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10                 LOS ANGELES DIVISION

11

12  In re:                          | Chapter 11 (Jointly Administered)

13  **PROJECT PLAYLIST, INC.**, a Delaware     Case No. 2:10-bk-42927-TD
Corporation,                        Case No. 2:10-bk-42946-TD

14  _____

15  In re:                          **MOTION OF THE OFFICIAL
COMMITTEE OF UNSECURED
CREDITORS OF PROJECT PLAYLIST,
INC. AND PLAYLIST, INC. FOR**

16  **PLAYLIST, INC.**                  **ORDER AUTHORIZING
COMPROMISE OF CONTROVERSY**

17      __ Affects Project Playlist, Inc.    **PURSUANT TO RULE 9019 OF THE
FEDERAL RULES OF BANKRUPTCY**

18      __ Affects Playlist, Inc.            **PROCEDURE WITH FACEBOOK, INC.
(ADV. NO. 2:12-ap-01996);**
       x  Affects both,

19                                   **MEMORANDUM OF POINTS AND
AUTHORITIES; DECLARATION OF**

20          Debtors.                 **CAROLINE R. DJANG IN SUPPORT
THEREOF**

21

22                                   **[Fed. R. Bankr. P. 9019(a); Loc. Bankr. R.
9013-1(o)]**

23                                   [No Hearing Required Unless Requested]

24

25  / / /

26  / / /

27  / / /

28

Rutan & Tucker, LLP
attorneys at law

2562/028512-0010
6006866.1 a09/12/13

1  **TO THE HONORABLE THOMAS B. DONOVAN, UNITED STATES**

2  **BANKRUPTCY JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE,**

3  **ALL INTERESTED PARTIES AND THEIR ATTORNEYS OF RECORD:**

4  **MOTION**

5        The Official Committee of Unsecured Creditors of Project Playlist, Inc. and

6  Playlist, Inc. (the "Committee"), hereby seeks an order approving the settlement agreement

7  by and between the Committee, on the one hand, and Facebook, Inc., a Delaware

8  corporation doing business in California ("Defendant"), on the other hand.  Specifically,

9  the Committee seeks an order that:

10        1.        Approves the proposed settlement with Defendant as set forth in the

11  Settlement Agreement and Mutual Release (the "Agreement") which is attached as

12  **Exhibit "A"** to the accompanying Declaration of Caroline R. Djang (the "Djang

13  Declaration"); and

14        2.        Authorizes the Committee and Defendant to execute the Agreement and take

15  any and all other actions necessary to effectuate the terms of the Agreement, and perform

16  the terms of the Agreement, including the exchange of mutual releases specified in the

17  Agreement.

18        This Motion is brought in accordance with Federal Rule of Bankruptcy Procedure

19  9019(a) and Local Bankruptcy Rule 9013-1(o)(1), and is made on the grounds that the

20  settlement is fair and equitable, and is in the best interests of the estate.  The Committee

21  has filed an adversary proceeding against Defendant.  Although the Committee believes its

22  claims against Defendant in the full amount demanded have merit, Defendant has defenses

23  that provide uncertainty in the face of litigation.  In addition, by resolving the dispute at

24  this time, the Committee will save the debtors' bankruptcy estate the expense of what

25  likely would be costly and lengthy litigation.  The Agreement provides for the payment of

26  **$15,000.00** to the debtors' estate by Defendant and, in exchange, a mutual release of

27  claims as more particularly set forth in the Agreement.

28  / / /

**Rutan & Tucker, LLP**
*attorneys at law*

1    The description of the Agreement contained in this Motion and the accompanying

2    Memorandum of Points and Authorities merely is a summary of the proposed settlement.

3    The complete terms of the proposed settlement are set forth in the Agreement attached as

4    **Exhibit "A"** to the accompanying Djang Declaration.

5    This Motion is based upon (1) the concurrently filed Notice of Motion; (2) the

6    attached Memorandum of Points and Authorities, Djang Declaration, and Exhibits thereto;

7    (3) any reply the Committee might file in support of this Motion; and (4) such further

8    evidence and arguments that may be presented to the Court before or at any hearing that

9    may be requested on the Motion.

10    **WHEREFORE**, based on the foregoing, the Committee respectfully requests that

11    the Court enter an order:  (1) granting this Motion; (2) approving the Agreement in its

12    entirety; (3) authorizing the parties to execute the Agreement and take any and all other

13    actions necessary to effectuate the terms of the Agreement; and (4) providing such other

14    relief as is just and proper under the facts and circumstances.

15
16    Dated:  September 12, 2013                    RUTAN & TUCKER, LLP
                                                    ROGER F. FRIEDMAN
17                                                  CAROLINE R. DJANG

18
19                                                  By:      /s/ Caroline R. Djang
                                                        Caroline R. Djang
20                                                      Attorneys for Official Committee of
                                                        Unsecured Creditors of Project Playlist,
21                                                      Inc. and Playlist, Inc.

22

23

24

25

26

27

28

Rutan & Tucker, LLP
*attorneys at law*

2562/028512-0010
6006866.1 a09/12/13                             -2-

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

On August 3, 2012, the Committee commenced an adversary proceeding against Defendant seeking to avoid and recover alleged preferences and/or fraudulent transfers in the sum of $149,681.52 (the "Action").  After an evaluation of the defenses asserted by Defendant and to save the estate the expense of what likely would be costly and lengthy litigation, the Committee has agreed to settle the Action, subject to Court approval.  As more particularly described in the Agreement, the parties' settlement provides for Defendant's to pay the amount of **$15,000.00** to the debtors' estate in exchange for dismissal of the Action and mutual releases of all claims.

The Committee believes that the settlement satisfies each of the prerequisites adopted by the Ninth Circuit for approval of a compromise of controversy, and thus, the Committee respectfully requests that the court grant the Motion.

## II.    BACKGROUND FACTS

The business of Project Playlist, Inc. and Playlist, Inc. (the "Debtors") was formed for the purpose of offering goods and services relating to music, entertainment and social networking over the internet.  The Debtors previously operated a website hosting an online service that allowed its users to discover, create, organize, enjoy and share music playlists. On the website, users could find and listen to songs, build playlists of their favorite music, listen to their playlists on a computer, share and build playlists with friends, and add playlists to their favorite website, blog, or social networking profile using a proprietary digital music player developed by the Debtors, known also as a "widget."

Each of the Debtors filed a voluntary petition under Chapter 11 of the Bankruptcy Code on August 6, 2010 (the "Petition Date").  On August 30, 2010, the Court entered an order directing the joint administration of the Debtors' bankruptcy cases.  On September 2, 2010, the Office of the United States Trustee duly appointed the Committee in the Debtors' bankruptcy cases.

/ / /

Rutan & Tucker, LLP
*attorneys at law*

1    On August 3, 2012, the Committee commenced the Action.  The complaint in the

2  Action (the "Complaint") alleges, among other things, that Defendant received transfers of

3  the Debtors' property (the "Transfers," and each, a "Transfer") before the Debtors filed for

4  bankruptcy that are avoidable as both/either preferential and/or fraudulent under the

5  Bankruptcy Code and under the California Civil Code as set forth in the Complaint.  The

6  Complaint seeks to avoid and recover transfers in the sum of $149,681.52.  Defendant

7  disputes the Committee's claims and does not believe it is subject to the liability alleged in

8  the Complaint.

9  **III.    THE AGREEMENT**

10    The Agreement provides for the Defendant's payment to the Debtor's bankruptcy

11  estate **$15,000** (the "Settlement Payment").  In exchange, the parties will grant mutual

12  releases to each other, and the Committee will dismiss the Complaint against the

13  Defendant.  The Agreement is subject to this Court's approval.

14    The above description is only a summary of the Agreement.  The Agreement in its

15  entirety is attached as **Exhibit "A"** to the Djang Declaration.

16  **IV.    ARGUMENT**

17    **A.    The Legal Standard For Approving A Compromise Of Controversy**

18    Rule 9019(a) of the Federal Rules of Bankruptcy Procedure states as follows with

19  respect to motions brought by trustees to approve settlements:

20    On motion by the trustee and after notice and a hearing, the
   court may approve a compromise or settlement.  Notice shall

21    be given to creditors, the United States Trustee, the debtor,
   and indenture trustees as provided in Rule 2002 and to any

22    other entity as the court may direct.

23  Fed. R. Bankr. P. 9019(a).

24    Compromise is favored over continued litigation.  *See In re A&C Properties*, 784

25  F.2d 1377, 1381 (9th Cir. 1986), *cert. denied*, 479 U.S. 854, 107 S. Ct. 189 (1986).

26  Generally, a compromise should be approved if it is "fair and equitable" and in "the best

27  interests of the estate".  *In re Woodson*, 839 F.2d 610, 620 (9th Cir. 1988).  Whether a

28  compromise will benefit or harm the debtor is immaterial.

Rutan & Tucker, LLP
*attorneys at law*

1    Specifically, in evaluating whether to approve a compromise, courts in the Ninth

2  Circuit must consider the following:

3          a)    The probability of success in litigation;

4          b)    the difficulties, if any, to be encountered in the matter of collection;

5          c)    the complexity of the litigation involved and the expense;

6                inconvenience and delay necessarily attending it; and

7          d)    the paramount interest of the creditors and a proper deference to their

8                reasonable views.

9  *A&C Properties*, 784 F.2d at 1381.

10    In considering these factors, courts are guided by two principles.  First, the law

11  favors compromise.  *See, e.g., In re Blair*, 538 F.2d 849, 851 (9th Cir. 1976).

12  Compromises are favored in bankruptcy, and have become "a normal part of the

13  process...".  *Protective Committee for Independent Stockholders of TMT Trailer Ferry Inc.*

14  *v. Anderson*, 390 U.S. 414, 424, 88 S. Ct. 1157 (1968), *quoting Case v. Los Angeles*

15  *Lumber Prods. Co.*, 308 U.S. 106, 130 (1939).  Second, a compromise should be approved

16  unless it "fall[s] below the lowest point in the range of reasonableness".  *In re W.T. Grant*

17  *Co.*, 699 F.2d 599, 608 (2nd Cir. 1983), *cert. denied*, 464 U.S. 822, 104 S. Ct. 88 (1985).

18  As the court in *W.T. Grant* commented:

19          [The] responsibility of the bankruptcy judge, and ours upon
            review, is not to decide the numerous questions of law and
20          fact raised by the appellants but rather to canvass the issues
            and see whether the settlement 'fall[s]' below the lowest point
21          in the range of reasonableness...

22  *Id.*, at 608.

23    Here, the Committee has negotiated a settlement with the Defendant that will bring

24  cash into the estate while minimizing the expense, delay, and uncertainty inherent in

25  litigation.  A settlement which has been negotiated by a trustee (or the Committee) is

26  entitled to deference.  *See In re Morrison*, 69 B.R. 586, 592 (Bankr. E.D. Pa. 1987)

27  (objecting creditors may not substitute their judgment for that of the trustee).  Also, when

28  considering these factors, the court need only canvass the issues, a mini trial on the merits

Rutan & Tucker, LLP
*attorneys at law*

1    is not required.  *Burton v. Ulrich (In re Schmitt)*, 215 B.R. 417, 423 (B.A.P. 9th Cir. 1997).

2    　　　　The compromise approval process does not contemplate that a bankruptcy court

3    will substitute its business judgment for that of a trustee or the Committee.  To the

4    contrary, a settlement that has been negotiated by a trustee (or the Committee), as

5    representative of the estate, is entitled to deference.  *See In re Morrison*, 69 B.R. at 592

6    ("The objecting creditors may not substitute their judgment for that of the Trustee").

7    　　　**B.**　　**The Agreement Should Be Approved Pursuant To Rule 9019(a) Of The**

8    　　　　　**Federal Rules of Bankruptcy Procedure**

9    　　　　For the following reasons, the Committee submits that the Agreement is in the best

10   interests of the estate, and satisfies the criteria established by the Ninth Circuit in the *A&C*

11   *Properties* case.

12   　　　　　　**1.**　　**The Probability Of Success In Litigation**

13   　　　　The Committee contends the Agreement is fair, in the best interests of the Estate,

14   and in the sound business judgment of the Committee.  Although the Committee believes

15   that it has a *prima facie* basis for seeking the avoidance and recovery of the Transfers

16   identified in the Complaint under applicable provisions of the Bankruptcy Code, the

17   Committee recognizes that it may be difficult, time consuming, and expensive to litigate

18   this matter, considering the defenses raised by the Defendant in discussions.  First of all,

19   the Defendant provided evidence that a portion of the Transfers were for rent paid in

20   advance, and therefore, not antecedent debt.  As to the remainder of the Transfers, the

21   Defendant raised the ordinary course of business defense.  If litigated, the Committee

22   would be required to prove that the Transfers were outside of the ordinary course of

23   business, both as between the Defendant and the Debtors, and as between landlords and

24   tenants in the Northern California region.  In addition to the ordinary course of business

25   defense, Defendant raised additional defenses, including contemporaneous exchange for

26   new value and mere conduit.  Also, Defendant has virtually unlimited resources to litigate

27   this matter, whereas the Committee has extremely limited resources.  In addition, the

28   Committee believes that success, while probable, is not guaranteed.  The Agreement

**Rutan & Tucker, LLP**
*attorneys at law*

1  eliminates the risk of litigation and the risk of loss.

2  In satisfying this first element of the four-part *A&C Properties* test, all that the

3  Committee, as the representative of the Estate is required to demonstrate is that, to the

4  reasonable satisfaction of the Court, all things being considered, it is prudent to eliminate

5  the risks of litigation to achieve specific certainty, though it might be considerably less, or

6  more, than if the case were fought to the bitter end. *See In re Aloha Racing Foundation,*

7  *Inc.*, 257 B.R. 83 (Bankr. N.D. Ala. 2000).

8  At least one court has found that a settlement reached by a trustee could be

9  approved even after the court had decided to rule for the trustee on a contested matter. *See*

10  *In re Dalen*, 259 B.R. 586 (Bankr. W.D. Mich. 2001).  In *Dalen*, the trustee sought

11  approval of a settlement after the court already had decided to rule for the trustee, such that

12  the estate would have profited if the settlement were rejected.  The ultimate issue for the

13  court, however, was whether the trustee exercised reasonable judgment in entering into the

14  settlement based upon information then in his or her possession.  As long as the court is

15  able to make this determination, and finds that the representative of the estate has fulfilled

16  his or her fiduciary duty to the estate, the fact that creditors are objecting to the settlement

17  is irrelevant to the court's determination under Rule 9019(a).

18  **2.**      **The Difficulties, If Any, To Be Encountered In the Matter of**

19  **Collection**

20  In analyzing the benefit of a proposed settlement, the Committee takes into account

21  the ability to collect any judgment from the defending party.  If forced to commence and

22  litigate an action, the net amount of recovery would be severely diminished through

23  protracted and expensive litigation.  In addition, the Committee has no present knowledge

24  of the ability or inability of Defendant to satisfy any money judgment ultimately entered

25  against it.  Thus, the Settlement is mutually beneficial for the Estate and Defendant.

26  Absent a settlement, the Committee would be forced to incur a significant amount of

27  attorneys' fees and expenses to ensure the same, or perhaps even a lesser, result that is

28  being achieved by the Settlement.  Thus, the Settlement will facilitate the effective and

**Rutan & Tucker, LLP**
*attorneys at law*

1   efficient administration of this case.

2              **3.        The Complexity Of The Litigation And The Expense,**

3                   **Inconvenience And Delay Necessarily Attending It**

4              The rationale behind public policy favoring pre-trial settlements is that litigation,

5   depending upon its complexity, can occupy a court's docket for years on end, depleting the

6   court's resources and the resources of the parties and the taxpayers while rendering

7   meaningful relief increasingly elusive.  In a bankruptcy context, such litigation costs can

8   be particularly burdensome on the bankruptcy estate given the financial instability of the

9   estate.  *See In re Grau*, 267 B.R. 896 (Bankr. S.D. Fla. 2001).  Here, litigating the

10  Committee's potential avoidance power claims to fruition would be time-consuming and

11  costly for the Estate.  If the Defendant opted to vigorously defend the Committee's claims,

12  the Committee would be required to conduct discovery into the underlying Transfers and

13  Defendant's defenses, try the Action to conclusion, and if successful, attempt to enforce a

14  judgment against Defendant, all of which would be time-consuming and expensive.

15  Assuming the Committee eventually obtained a final judgment in its favor, it could be

16  confronted with an appeal that also would be time-consuming and costly.

17             The Committee and Defendant agreed on the amount of the Settlement Payment

18  after arms-length negotiations and the evaluation by the Committee of Defendant's

19  arguments and potential defenses.  For the Committee to litigate these matters through trial

20  would cost the Estate substantial resources.  Also, the Agreement was reached before the

21  Committee and Defendant had to engage in time-consuming and costly discovery.  There

22  likely would be numerous discovery requests served, together with depositions, including

23  expert witness depositions in light of the Defendant's potential ordinary course and new

24  value defenses.  Substantial document review also could ensue.

25             The proposed Settlement eliminates the further administrative expenses that would

26  have to be expended to seek a resolution of the Committee's claims against Defendant.  As

27  a result, the Committee's decision to put an end to the dispute with Defendant will benefit

28  the Estate and creditors alike.

Rutan & Tucker, LLP
*attorneys at law*

1    **4.    The Paramount Interest Of Creditors**

2        The paramount interest of creditors which a bankruptcy court must consider

3    in deciding whether to approve a proposed compromise generally reflects not only the

4    desire of creditors to obtain the maximum possible recovery, but also their competing

5    desire that recovery should occur in the least amount of time possible.  Here, the

6    Agreement to resolve the Committee's claims against Defendant in an expeditious manner

7    is meant to avoid further administrative expenses and delay, and to provide certainty of

8    recovery for the Estate.  The Committee, in its reasonable business judgment, has

9    determined the proposed Settlement is in the best interests of the Estate and creditors.

10   Court approval of the Settlement and the Agreement will provide a certain cash recovery to

11   be paid to the estate which then can be used to pay the claims of creditors.

12   **V.    CONCLUSION**

13       Based on the foregoing, the Committee respectfully requests that the Court enter an

14   order:  (1) granting the Motion; (2) approving the Agreement in its entirety; (3) authorizing

15   the parties to execute the Agreement and take any and all other actions necessary to

16   effectuate the terms of the Agreement; and (4) providing such other relief as is just and

17   proper under the facts and circumstances.

18   Dated:  September 12, 2013                    RUTAN & TUCKER, LLP
                                                   ROGER F. FRIEDMAN
19                                                 CAROLINE R. DJANG

20

21                                      By: _____/s/ Caroline R. Djang_____
                                               Caroline R. Djang
22                                             Attorneys for Official Committee of
                                               Unsecured Creditors of Project Playlist,
23                                             Inc. and Playlist, Inc.

24

25

26

27

28

Rutan & Tucker, LLP
*attorneys at law*

2562/028512-0010
6006866.1 a09/12/13                         -7-

## DECLARATION OF CAROLINE R. DJANG

I, Caroline R. Djang, declare as follows:

1.      I am an individual over the age of eighteen, and I am one of the attorneys primarily responsible for representing the Official Committee of Unsecured Creditors of Project Playlist, Inc. and Playlist, Inc.

2.      Except as otherwise stated herein, all statements made herein are based on my personal knowledge or my review of relevant documents.  If called to testify as a witness in this matter, I could and would testify competently under oath to the truth of the statements set forth herein.

3.      I make this declaration in support of the *Motion of the Official Committee of Unsecured Creditors of Project Playlist, Inc. and Playlist, Inc. for Order Authorizing Compromise of Controversy Pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure with Facebook, Inc. (Adv. No. 2:12-ap-01996)* (the "Motion") to which this declaration is appended.

4.      Debtors[1] filed petitions under Chapter 11 of the Bankruptcy Code on August 6, 2010.

5.      On August 3, 2012, the Committee commenced an adversary proceeding against Facebook, Inc. (the "Defendant") seeking to avoid and recover alleged preferential and/or fraudulent transfers (the "Transfers") in the sum of $149,681.52 (the "Action"). After an evaluation of the potential defenses that may be asserted by Defendant and to save the Estate the expense of what likely would be costly and time-consuming litigation, the Committee has agreed to settle the Action, subject to Court approval.

6.      In an attempt to reduce the administrative expenses to the estate while at the same time infusing the estate with cash, the parties engaged in arms-length settlement discussions with David M. Serepca of McMahon Serepca LLP, counsel for the Defendant. As noted and more fully described in the Motion, the Committee believes the Agreement is

---

[1]   Capitalized terms not otherwise defined in this declaration have the meanings ascribed thereto in the accompanying Motion and Memorandum of Points and Authorities.

Rutan & Tucker, LLP
*attorneys at law*

1   in the best interests of the Estate and creditors and should be approved by the Court.

2         7.     The Committee agreed to settle the Estate's claims as described in the

3   Motion to avoid the uncertainty, expense, and delay of litigating the dispute.  The

4   compromise was reached and has been reduced to the written settlement agreement which

5   has been executed and is attached hereto as **Exhibit "A."**

6         8.     In the Committee's reasonable business judgment, approval of the proposed

7   compromise is in the best interests of the Estate.  The Agreement will bring cash into the

8   Estate and will minimize the costs of any further litigation.  The Agreement also avoids the

9   risk of any adverse result if the Committee were forced to continue prosecuting the Action

10  against the Defendant.

11        9.     Although the Committee believes its claims for avoidance and recovery of

12  the Transfers have merit, without conducting extended, expensive and protracted discovery

13  and litigation, the Committee could not be guaranteed that the facts and evidence at trial

14  would demonstrate that the Committee could defeat the defenses being argued by

15  Defendant to obtain a judgment.  Therefore, although the Committee presented good faith

16  claims, by no means are positive results guaranteed, again without incurring significant

17  time and money in discovery, pre-trial motions, and trial.

18        10.    If the Committee were forced to litigate through the conclusion of trial the

19  claims against Defendant, it is possible that a significant period of time would pass before

20  any judgment would be rendered.  It also is possible that any judgment obtained would be

21  the subject of an appeal and further litigation.  During this time, administrative fees and

22  costs would continue to escalate, with no certainty that at the end there would be any

23  additional benefit to the estate beyond what already is contained in the Agreement.

24  / / /

25  / / /

26  / / /

27  / / /

28

1  As a result, the decision to put an end to this dispute will benefit the Estate and creditors

2  alike.

3          I declare under penalty of perjury under the laws of the United States of America

4  that the foregoing is true and correct.

5          Executed this 12th day of September, 2013 at Costa Mesa, California.

6

7

8                                          /s/ Caroline R. Djang
                                           Caroline R. Djang
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Rutan & Tucker, LLP**
*attorneys at law*

2562/028512-0010
6006866.1 a09/12/13                                -10-

# EXHIBIT A

## SETTLEMENT AGREEMENT AND MUTUAL LIMITED RELEASE

This SETTLEMENT AGREEMENT AND MUTUAL LIMITED RELEASE (the "**AGREEMENT**") is entered into as of August ____, 2013 by and between The Official Committee of Unsecured Creditors of Project Playlist, Inc. and Playlist, Inc. (the "**COMMITTEE**") for the jointly administered estates (collectively, the "**ESTATE**") of Project Playlist, Inc. and Playlist, Inc. (collectively, the "**DEBTORS**"), on the one hand, and Facebook, Inc. (the "**DEFENDANT**," and collectively with the **COMMITTEE**, the "**PARTIES**"), on the other hand, as follows:

### I.

### RECITALS

A.    On August 6, 2010 (the "**PETITION DATE**"), each of the **DEBTORS** filed in the Los Angeles Division of the United States Bankruptcy Court for the Central District of California (the "**BANKRUPTCY COURT**") voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code (the "**BANKRUPTCY CODE**"), thereby commencing their respective Chapter 11 bankruptcy cases styled *In re Project Playlist, Inc.*, Case No. 2:10-bk-42927-TD, and *In re Playlist, Inc.*, Case No. 2:10-bk-42946-TD (the "**BANKRUPTCY CASES**").

B.    On August 30, 2010, the Court entered an order directing the joint administration of the **DEBTORS' BANKRUPTCY CASES**.

C.    On September 2, 2010, the Office of the United States Trustee duly appointed the **COMMITTEE** in the **DEBTORS' BANKRUPTCY CASES**.

D.    On June 29, 2012, **DEBTORS** and the **COMMITTEE** entered into a stipulation to assign from the **DEBTORS** to the **COMMITTEE** all rights to pursue, prosecute, and settle avoidance actions, and on July 10, 2012, the **BANKRUPTCY COURT** entered an order approving the stipulation effectively assigning all rights to pursue, prosecute, and settle all claims, actions and claims for relief arising under sections 510 and 544 through 553 of the Bankruptcy Code from **DEBTORS** to the **COMMITTEE**.

E.    On August 3, 2012, the **COMMITTEE** filed in the **BANKRUPTCY COURT** a complaint (the "**COMPLAINT**") against **DEFENDANT**, thereby initiating Adversary Proceeding No. 2:12-ap-01996-TD (the "**ADVERSARY PROCEEDING**"), which seeks, among other things, to avoid and recover alleged avoidable transfers in the amount of **$149,893.84** (the "**TRANSFERS**") pursuant to Sections 544, 548 and 550(1) of the **BANKRUPTCY CODE**.

F.    **DEFENDANT** denies that the **COMMITTEE** is entitled to avoid or recover the **TRANSFERS** for the benefit of the **ESTATE**.

G.    On August ____, 2013, the **COMMITTEE** filed motion for order authorizing compromise of controversy with **DEFENDANT** pursuant to Rule 9019 of Federal Rules of Bankruptcy Procedure (the "**MOTION**").

-1-

**Exhibit A, Page 11**

H.    The parties now desire to resolve the **COMMITTEE'S** claims (or any successor or assignee of the Committee) against **DEFENDANT** for the avoidance and recovery of any actual or alleged transfer of money or property from the **DEBTORS** to or for the benefit of **DEFENDANT** before the **PETITION DATE** under the **BANKRUPTCY CODE** and any state law allowing and providing for avoidance and recovery of the alleged **TRANSFERS**.

## II.
## AGREEMENT

**NOW, THEREFORE**, in consideration of the foregoing Recitals and of the mutual agreements, covenants and releases set forth herein, and for other good and valuable consideration, the sufficiency and adequacy of which is acknowledged by the **PARTIES**, the **PARTIES** hereto agree as follows:

1.    Recitals.  The recitals contained in paragraphs A through H, above (the "**RECITALS**"), are an integral part of this **AGREEMENT** and are incorporated herein by reference.

2.    Rules of Construction.  The following rules of construction govern and apply to the interpretation and construction of this **AGREEMENT**:

2.1.    This **AGREEMENT** has been drafted with the suggestions and revisions of all **PARTIES** or, alternatively, all **PARTIES** have had an opportunity to have input into the drafting of this **AGREEMENT**.  As a result, the terms of this **AGREEMENT** shall not be construed more strictly against one party than the other party.

2.2.    The underscored word or words appearing at the commencement of sections of this **AGREEMENT** are intended only as a guide and are not intended, and should not be construed, as controlling, enlarging, restricting, explaining or modifying, in any manner, the language or meaning of those sections or subsections.

3.    Settlement.

3.1    **DEFENDANT** shall pay the **ESTATE** the total amount of **$15,000** (the "**SETTLEMENT AMOUNT**"), on or before fourteen (14) business days after receipt by **DEFENDANT'S** counsel of record at McMahon Serepca LLP of the an order entered by the **BANKRUPTCY COURT** approving this **AGREEMENT**.

3.2    **DEFENDANT** shall pay the **SETTLEMENT AMOUNT** by business or cashier's check made payable to "Project Playlist, Inc." and by delivering the check to the **COMMITTEE'S** counsel of record, Roger F. Friedman, Esq., Rutan & Tucker, LLP, 611 Anton Boulevard, 14th Floor, Costa Mesa, California 92626.

3.3    The **COMMITTEE** shall promptly deposit the check and dismiss the **COMPLAINT** and the **ADVERSARY PROCEEDING** with prejudice within fourteen (14) business days after the issuing financial institution honors the check for **DEFENDANT's** payment of the **SETTLEMENT AMOUNT**.

4.    Mutual Release.  Except for: (a) a breach of this **AGREEMENT** and claims arising by

-2-

reason of such breach; (b) enforcement of rights, obligations and duties arising under this **AGREEMENT**; and (c) any claims explicitly set forth and submitted by **DEFENDANT** pursuant to this **AGREEMENT**, the **COMMITTEE** , on behalf of itself and the **ESTATE** on the one side, and **DEFENDANT** on the other side, do hereby fully and finally compromise and settle with, and forever release, remise, relieve, waive, relinquish and discharge each other from any and all claims, complaints, rights, manner of action or actions, cause or causes of action, suits, debts, dues, demands, obligations, charges, costs, expenses (including but not limited to attorneys' fees) sums of money, controversies, damages, accounts, agreements, covenants, contracts, judgments, reckonings, liens and liabilities of every kind and nature whatsoever, whether at law or in equity, whether based upon statute, common law or otherwise, whether matured or unmatured, whether contingent or non-contingent, whether direct or indirect, whether known or unknown, whether suspected or unsuspected, whether or not hidden and without regard to the subsequent discovery or existence of different or additional facts, which the **PARTIES** or the **ESTATE** ever had, now have, or in the future may claim to have against each other that arose or are arising out of, based on, asserted in, or in connection with any matter, cause, or thing related to any claims that were brought or could have been brought in the **COMPLAINT** or the **ADVERSARY PROCEEDING** or any other state or federal law avoidance power claims (the "**CLAIM**" or "**CLAIMS**"), any of the above now accrued or hereafter accruing; provided, however, nothing contained in this Section 4 or in any other provision of this **AGREEMENT** shall constitute a waiver or release of **DEFENDANT'S** right to file a claim under section 502(h) for the **SETTLEMENT** payment.

5.      Final Release and Bar.

     5.1      Except with respect to the **DEFENDANT'S** claims set forth pursuant to this **AGREEMENT**, the **PARTIES** hereby acknowledge that it is their intention that this **AGREEMENT** shall be effective as a full and final release of and as a bar with prejudice to each and every **CLAIM**, which the **PARTIES** or the **ESTATE** have or had against one another as is applicable, directly or indirectly.  In connection with such waiver and relinquishment, the **PARTIES** acknowledge that they or their attorneys may hereafter discover facts different from or in addition to the facts that they now know or believe to be true with respect to the subject matter of this **AGREEMENT**, but that it is their intention to hereby fully, finally, absolutely, and forever release any and all **CLAIMS** released pursuant to Section 4, above, which now do exist, may exist or heretofore have existed between them, and that in furtherance of such intentions the release as given herein by the **PARTIES**, shall be and remain in effect as a full and complete release of the **CLAIMS** released in Section 4 above, notwithstanding the discovery of any such different or additional facts.

     5.2      Notwithstanding the discovery of any such additional or different facts, the **PARTIES** certify that they have read and understand Section 1542 of the California Civil Code set forth below:

          **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF**

-3-

**Exhibit A, Page 13**

**KNOWN BY HIM OR HER MUST HAVE MATERIALLY
AFFECTED HIS OR HER SETTLEMENT WITH THE
DEBTOR.**

5.3    The **PARTIES** waive application of Section 1542 of the California Civil Code and any other statutes, common law rights, rules or the like which may operate to limit the intent of this **AGREEMENT** with respect to the **CLAIMS** released in Section 4 above, including the release of unknown **CLAIMS**. The **PARTIES** understand and acknowledge the significance and consequence of this waiver of Section 1542 of the California Civil Code is that even if they eventually discover additional **CLAIMS** which previously were unknown to them as of the date of this **AGREEMENT**, or if they suffer additional damages on account of the **CLAIMS** released in Section 4 above, they will not be permitted to make any claim for such damages.

6.    Covenant Not to Sue. The **PARTIES** hereby covenant and agree that they will forever refrain and forbear from commencing, instituting or prosecuting any lawsuit action or other proceeding against each other, based on, arising out of, or in connection with the **CLAIMS** released in Section 4, above. Notwithstanding the foregoing, nothing contained in this **AGREEMENT** shall preclude the **PARTIES** from exercising their respective rights in the event the other party breaches any of its obligations under this **AGREEMENT**.

7.    Denial of Liability. This **AGREEMENT** is executed by the **PARTIES** for the sole purpose of settling the matters involved in the disputes that are discussed herein, and it is expressly understood and agreed, as a condition hereof, that this **AGREEMENT** should not constitute nor be construed to be an admission of the truth or correctness of any claim or defense asserted by any of the **PARTIES** hereto. The **PARTIES** specifically disclaim any liability to, or wrongful acts against, each other and against any other person or entity.

8.    Mutual Warranties and Representations. The **PARTIES** hereby represent and warrant to each other that:

8.1    Before the execution of this **AGREEMENT**, each of the **PARTIES** sought the advice of independent legal counsel of their own selection regarding the substance and effect of this **AGREEMENT**, or each of the **PARTIES** had the opportunity to consult with independent legal counsel and has knowingly chosen not to do so.

8.2    Before the execution of this **AGREEMENT**, each of the **PARTIES** carefully read this **AGREEMENT**, and each of the **PARTIES** fully understands this **AGREEMENT** and its terms and provisions.

8.3    Before the execution of this **AGREEMENT**, each of the **PARTIES** made such investigation of the facts and matters pertaining to this **AGREEMENT** and settlement of the **CLAIMS** as each of them deems necessary.

8.4    Except for the written statements, representations, and promises contained in this **AGREEMENT**, the **PARTIES** are not relying upon any statement, representation, or promise from the other party or any of the other party's agents, employees, representatives, or attorneys in entering into this **AGREEMENT**.

8.5     Each person executing this **AGREEMENT** on behalf of a party hereto has been duly authorized to execute this **AGREEMENT** on behalf of the party and to bind that party to the terms and provisions of this **AGREEMENT** by appropriate appointment, delegation of authority, corporate by-laws or board resolutions. The **COMMITTEE** has been duly authorized to execute this **AGREEMENT** on behalf of the **ESTATE** and to bind the **ESTATE** to the terms and provisions of this **AGREEMENT**.

8.6     As to the matters addressed in this **AGREEMENT**, this **AGREEMENT** is intended to be final and binding upon the **PARTIES**, regardless of any mistake of fact or law made by any or all of the **PARTIES**. Each of the **PARTIES** assumes the risk of any mistake of fact or law in relation to this **AGREEMENT** and may not set aside this **AGREEMENT**, or any portion thereof based on the subsequent discovery of any such mistake of fact or law.

9.      Complete Agreement. This **AGREEMENT** contains the entire agreement between the parties with respect to the matters addressed herein, and this **AGREEMENT** supersedes all prior agreements, written or oral. If a dispute arises under or relating to this **AGREEMENT**, neither of the **PARTIES** may introduce evidence of any alleged prior or contemporaneous agreements or understandings to alter the terms of this **AGREEMENT**.

10.     No Oral Modifications. This **AGREEMENT** may be amended only in a writing signed by each of the **PARTIES**.

11.     Retention of Jurisdiction. The **BANKRUPTCY COURT** shall retain exclusive jurisdiction to resolve any controversy or claim arising out of or relating to this **AGREEMENT**.

12.     Attorneys' Fees and Costs. Each of the **PARTIES** shall each bear its own costs and attorneys' fees, if any, with regard to any aspect of the **CLAIMS** or defense of the **CLAIMS** including with respect to the drafting, negotiation and execution of this **AGREEMENT** and the **MOTION**. However, the **PARTIES** agree that in the event of any legal or equitable action or arbitration proceeding required to enforce or defend this **AGREEMENT**, the prevailing party as that term is defined by Section 1717 of the California Civil Code, shall be entitled to an award of its attorneys' fees, costs, and expenses incurred in connection with the enforcement or defense of this **AGREEMENT**, in addition to any other damages it may suffer as a result of the violation or breach of this **AGREEMENT**, or other relief to which it may be entitled.

13.     Successors. This **AGREEMENT** shall bind and inure to the benefit of the **PARTIES**, the **ESTATE**, and the **PARTIES'** respective successors, predecessors and assigns.

14.     Severability. If any provision of this **AGREEMENT** is held to be invalid, illegal, or unenforceable, that provision shall be interpreted as severable and severed from this **AGREEMENT** and all other provisions contained in this **AGREEMENT** shall nevertheless continue and remain in full force and effect, provided that the **AGREEMENT** that remains does not change the nature or effect of the respective releases provided for in the original **AGREEMENT**.

-5-

**Exhibit A, Page 15**

15.    Governing Law. This **AGREEMENT** shall be construed and governed by the internal laws of the State of California in effect of the date of execution of this **AGREEMENT**.

16.    Counterparts. This **AGREEMENT** may be executed in one or more counterparts and by facsimile, each of which shall be deemed an original, and all of which together shall constitute one single original **AGREEMENT**. This **AGREEMENT** shall not be binding until signed by both **PARTIES**.

17.    Further Assurances. The **PARTIES** agree to and shall cooperate fully with each other in the performance of this **AGREEMENT**, and shall execute such additional agreements, documents, stipulations, and/or instruments as may reasonably be required to carry out the intent of the parties to this **AGREEMENT**.

WHEREFORE, the **PARTIES** stipulate and agree to the all of the foregoing effective as of the first date written above.

THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS OF PROJECT PLAYLIST, INC.
AND PLAYLIST, INC.

By: _____

Name: Philip C. Maynard
Its: Chairperson


FACEBOOK, INC.

By: _____

Name: Sandeep Solanki
Its: Associate General Counsel, Litigation

-6-

**Exhibit A, Page 16**

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
611 Anton Blvd., Ste. 1400, Costa Mesa, CA  92626.

A true and correct copy of the foregoing document entitled (*specify*):  **MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF PROJECT PLAYLIST, INC. AND PLAYLIST, INC. FOR ORDER AUTHORIZING COMPROMISE OF CONTROVERSY PURSUANT TO RULE 9019 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE WITH FACEBOOK, INC. (ADV. NO. 2:12-ap-01996); MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF CAROLINE R. DJANG IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) September 12, 2013, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

⊠ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) September 12, 2013, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Hon. Thomas B. Donovan
United States Bankruptcy Court
255 E. Temple Street, Suite 1352
Los Angeles, CA 90012

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

**VIA EMAIL**
David M. Serepca
MCMAHON SEREPCA LLP
San Carlos Business Park
985 Industrial Road, Suite 201
San Carlos, California 94070
Email:  david@msllp.com

**VIA EMAIL**
Margaret Widlund
MCMAHON SEREPCA LLP
San Carlos Business Park
985 Industrial Road, Suite 201
San Carlos, California 94070
Email:  margaret@msllp.com

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| September 12, 2013 | Cecilia Solórzano | /s/ Cecilia Solórzano |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                                    **F 9013-3.1.PROOF.SERVICE**

**TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**

- Vanessa L Au    vanessaau@paulhastings.com
- Caroline Djang    cdjang@rutan.com
- Caroline Djang    cdjang@rutan.com
- Roger F Friedman    rfriedman@rutan.com
- Eric J Fromme    efromme@rutan.com
- Alan S Gutman    alangutman@gutmanlaw.com
- Garrick A Hollander    ghollander@winthropcouchot.com, pj@winthropcouchot.com;vcorbin@winthropcouchot.com;chipp@winthropcouchot.com
- Mark S Horoupian    mhoroupian@sulmeyerlaw.com, kfox@sulmeyerlaw.com
- Ivan L Kallick    ikallick@manatt.com, ihernandez@manatt.com
- Ivan L Kallick    ikallick@manatt.com, ihernandez@manatt.com
- David S Kupetz    dkupetz@sulmeyerlaw.com, dperez@sulmeyerlaw.com
- Mette H Kurth    kurth.mette@arentfox.com
- Queenie K Ng    queenie.k.ng@usdoj.gov
- Michael B Reynolds    mreynolds@swlaw.com, kcollins@swlaw.com
- Wayne R Terry    wterry@hemar-rousso.com
- Marcus Tompkins    mtompkins@sulmeyerlaw.com, jbartlett@sulmeyerlaw.com
- Katherine A Traxler    katietraxler@paulhastings.com
- United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov
- Eric D Winston    ericwinston@quinnemanuel.com
- Marc J Winthrop    mwinthrop@winthropcouchot.com, pj@winthropcouchot.com;vcorbin@winthropcouchot.com

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                **F 9013-3.1.PROOF.SERVICE**